## ADDITION TO TAX RETURN HELD TO HAVE BEEN A CLERICAL ERROR.

Superior Court of Cincinnati.

FOURTH NATIONAL BANK V. WM. A. HOPKINS, TREASURER, ET AL.

Decided, February 2, 1915.

*Taxation of National Banks—Addition to Return Enjoined—Evidence Warranting the Conclusion that the Addition Was Due to a Clerical Error.*

An increase by the district board of assessors, according to the direction of the state tax commission, of the amount of the return of a national bank, may be enjoined where that increase was evidently the result of a clerical error.

*Charles B. Wilby,* for plaintiff.
*Louis H. Capelle,* Assistant Prosecutor, contra.

MERRELL, J.

This action was brought to enjoin the treasurer and auditor from collecting taxes upon the return for taxation of the Fourth National Bank as corrected and amended by the state tax commission, and to compel the defendants to receive payment of taxes as upon the return of the bank before correction. The petition contains numerous allegations which need not be specially referred to. The substance of the plaintiff's claim is that the addition made by the state tax commission of $25,000 was the product of a clerical error. It was upon this theory alone that

the temporary restraining order was issued, and upon this theory alone that the case has now been heard and finally submitted.

The addition made by the state tax commission to the return of the bank was in the sum of $25,000 to be added to the item of real estate as given in the 1914 return of the Fourth National Bank.

The form of return required of banking corporations requires a statement of the "true or actual" value of the real estate "as carried on books of company." In the 1913 return of the plaintiff bank the "true or actual" value of the real estate is given as $500,000. In the 1914 return the "true or actual" value is given as $450,000. In the returns both for 1913 and 1914 the value of the real estate as carried on the books of the company is given as $475,000. In the returns of the bank both for 1913 and 1914 under the schedule of "resources" the real estate is returned for $475,000. The tax value of the real estate as shown by the tax duplicate was in both years $409,380. At the hearing of this case it was claimed in behalf of the bank that the statement that the "true or actual" value of the real estate was $500,000 was made inadvertently. However, this may be, in the year 1913 the tax commission, upon noticing this statement of the "true or actual" value promptly raised the return of the real estate made by the bank in the sum of $475,000 to conform with this admission of the bank's officer of a true value of $500,000. It is the testimony of the president of the bank at the present hearing that in 1913 an effort was made on the part of the bank to convince the state tax commission of the alleged error in fixing for taxation the value of the real estate at $500,000. This effort in the fall of 1913 was not persevered in on the part of the bank, so it is claimed, for the reason that the bank's officials were content to submit to the mistake for one year trusting to correct it in the next. At this point it may be remarked that the action of the state tax commission in 1913 was eminently proper as that action consisted merely in bringing the value of the real estate as reported for taxation up to the figure which the sworn statement of the bank, apparently at

least, admitted to be the true value. This being the situation until the 1914 return was presented to the taxation officials, the attention of the latter was naturally and properly directed to the large discrepancy disclosed in the statement of "true or actual value" as between the 1913 and 1914 returns. This discrepancy as has been pointed out, amounted to the sum of $50,000. Apparently the state tax commission refused to accept the idea of a depreciation in real estate of $50,000 and apparently again, it was the intention of the taxing officials to refuse to credit a depreciation of more than half that amount, or $25,000. The state board accordingly ordered the district assessors to add $25,000 to the item of real estate valuation, and the district assessors accordingly amended the bank's return, not in the item of "true or actual value" of real estate, but in the value given by the bank as the basis for taxation. The addition of $25,000 to the "true or actual value" in the 1914 return would have brought that item up to $475,000, and the actual addition made, that is, to the value returned for purposes of taxation, increased the item in question from $475,000 to $500,000. The issue between the Fourth National Bank and the taxing authorities was the subject of interviews between counsel representing the bank and the district assessors and this issue was also discussed in certain correspondence in evidence between the representative of the bank and the state tax commission.

It is in evidence in behalf of the bank, that neither the bank nor any official representing it had been given notice of the proposed increase nor of the fixing of a time and place for hearing as provided by Section 5617-2, General Code, and it may be that the failure of the commission to give such notice, if failure there was, would invalidate the commission's amendment of the return. However, it also appears that notice of the completion of tax lists was published by district assessors as provided by Section 21 of the so-called Warnes law, and it may equally be that the bank is estopped, by its own failure to examine such tax lists, to complain of the figures. These questions I do not go into as the determination of the issue is placed upon other grounds.

Recurring to the correspondence already referred to, we find in the letter of the state tax commission addressed to the district board of assessors of Hamilton county, under date of December 15, 1914, the following:

"Upon investigation the commission finds that the $25,000 addition to real estate is the same as was made in 1913. In the 1914 report the true and actual value of the real estate is given as $450,000 and the value of the same property is given in 1913 as $500,000. The commission did not believe the real estate depreciated $50,000 in one year, hence the addition was made."

The foregoing statement of the position of the state tax commission, viewed in the light of the oral testimony in the case, leads almost inevitably to the conclusion that the valuation of the real estate for 1914, as finally fixed by the commission, was not a result of an opinion or judgment or the exercise of discretion as to the proper valuation of the property for taxation purposes. The implication of fact is strong that the taxing authorities did not *directly* fix the value of the real estate, or attempt or intend so to do. What the commission did in fact do was to refuse to credit or receive a return for taxation reciting a depreciation in real estate of $50,000. In this latter action the commission exercised proper, and doubtless sound, judgment, which the court is powerless to disturb. However, due doubtless to the pressure of business and a consequent inability to co-ordinate completely the work of the state commission and that of the district assessors, the latter added the sum of $25,000 to the bank's return of real estate as given for the purposes of taxation, instead of to the bank's return of "true or actual value" as was apparently the intent of the state commission. In this view of the evidence in the case the addition as actually made is the result of a clerical error, accomplishing, if uncorrected, substantial injustice.

It may be suggested that the taxing authorities are not interested primarily in the return made of the "true or actual value" inasmuch as this is not the basis of taxation. Such a suggestion, however, would be refuted by the facts in the pres-

ent case which disclose that in 1913 a statement by the bank of "true or actual value," possibly erroneous, was made the foundation by the commission for the fixing of taxable value. Correspondingly, then, in 1914 the commission was properly interested in a genuine statement of "true or actual value" lest a mis-statement uncorrected should become the basis of a future claim on the part of the bank for unjustly reducing the taxable value.

It was manifestly incompetent at this hearing to receive testimony as to the true value in the market sense of the plaintiff's real estate properties. Enough evidence, however, was admitted to indicate that the trend of values in the locality in question was rather downward than upward. This evidence had no place in the case other than as going to the good faith of the plaintiff. In no sense is this evidence the basis of this decision.

Furthermore, it should be perfectly clear that this court entertains no misconception as to its power to revise the judgment of the taxing authorities as to the values of any property whatsoever. The court has no such power. As indicated, however, the evidence is sufficiently clear and convincing to warrant the conclusion that the addition to the return of the Fourth National Bank was, in the way the addition was made, the result of a clerical error and within the jurisdiction of this court.

The temporary restraining order will therefore be made perpetual.